## HAHN *v.* HAHN

[No. 115, October Term, 1948.]

562

*Decided March 11, 1949.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Wylie L. Ritchey* for the appellant.

*Stanford Hoff*, with whom was *Donald C. Sponseller*
on the brief, for the appellee.

COLLINS J., delivered the opinion of the Court.

This is an appeal by Hugh H. Hahn, appellant, from
a decree of the Circuit Court for Carroll County grant-
ing a divorce to his wife, Ada I. Hahn, appellee, on the
ground of voluntary separation and also ordering the
appellant to pay to the appellee the sum of $2,900.00 with
interest from the date of the decree, August 13, 1948, and
costs of the proceeding.

On October 23, 1947, the appellee filed a bill of com-
plaint for a divorce *a vinculo matrimonii* from the ap-
pellant on the ground of abandonment. Subsequently
the appellant filed his cross-bill against his wife for a
divorce on the ground of adultery. After testimony was
taken in open court on March 12, 1948, the Chancellor
filed an opinion and decree dismissing both bills on the
ground that the charges were not proven. In the opinion
in that case the Chancellor said: "* * * the parties to
this cause agreed to terminate their marital relations
* * *. The original bill was brought on the ground of
abandonment by the husband and as they, in the Court's
judgment, entered into a voluntary separation, the bill
cannot be maintained against the husband on the ground
of abandonment." The Chancellor also found that as the
wife had property in her own right, she was not entitled
to counsel fees.

Subsequently on April 12, 1948, the appellee filed the
bill of complaint, now before us, for a divorce *a vinculo
matrimonii* on the ground that she and her husband had
voluntarily lived separate and apart since March, 1945.

She also alleged that the separation was beyond any reasonable expectation of reconciliation. In that bill she also asks the court to "determine all questions hereto in connection with the ownership of personal property possessed or claimed by either or both of them, and make such division of said property between them as may be just and equitable." The appellant having failed to file an answer to that bill, a decree *pro confesso* was taken against him on May 28, 1948, after which testimony was taken before the court on June 11, 1948. Before a decree had been passed, on July 15, 1948, the appellant filed a petition to strike out the decree *pro confesso* and asked leave to file an answer. After further proceedings, the decree *pro confesso* was stricken out and an answer to the bill of complaint, now before us, was filed by the appellant. In that answer he denied that the parties had voluntarily lived separate and apart and denied that he had retained the majority of the personal property. After further testimony, on July 30, 1948, the Chancellor passed a decree granting the appellee a divorce *a vinculo matrimonii*, on the ground of a voluntary separation agreement, from the appellant and ordering that he pay to the appellee "the sum of twenty-nine hundred dollars (being the principal of the mortgage of $4500.00, less the sum of $1600.00)," with interest from the date of the decree and costs of suit. From that decree the appellant appeals here.

Without reciting in detail the testimony, it is evident that the parties to this cause had lived rather a turbulent married life for many years resulting in the filing of the former divorce suits, as hereinbefore stated. From the testimony in the case before us it is evident that the husband and wife have lived separate and apart since March, 1945. He says the separation was in December, 1944, "as far as I was concerned". When asked on cross-examination whether there was an agreement between herself and her husband to live voluntarily separate and apart, she answered "there wasn't any agreement". She evidently meant by this that there was no formal written

agreement between the parties. The appellant testified: "One Saturday after she left, I went in the barber shop and she was in right fair humor and so we agreed to settle it. So, she wrote a little note and left a line for me, the ten thousand dollar interest account, she would get the interest account, and she wrote out a check in her handwriting and I signed it, and three thousand dollars, a three thousand dollar check, and I signed a similar paper for this mortgage. She was going to buy a house and room and board me for $15.00 a week, we were to live in two different bed rooms like strangers, each one coming and going as they pleased and each one was to keep a key for the lock box which had sixteen hundred dollars in it. Neither one was to touch it because if she roomed and boarded me for the amount said it was hers, and if she refused to have a home and room and board me then it was to be mine. She failed to do so. She said she couldn't find a house. Nothing that I ever picked out, or did, suited her, so I give her the privilege to do as she pleased." Although this agreement was never signed, the separation has continued. Both parties admit that no request was made of the other party to return and resume cohabitation.

This was not only an agreement to separate but also an agreement for a division of their property. It is apparent that, although both parties carried out that part of the agreement to live separate and apart, the wife did not fulfill her part to buy a house and board the husband as agreed. As found by the Chancellor the joint assets at the time of the separation were as follows:

| | |
|---|---|
| Joint checking account in the Farmers and Mechanics National Bank | $25,460.46 |
| Interest account in the same Bank | 10,069.14 |
| Mortgage of Paul M. Hahn and wife | 4,500.00 |
| Total | $40,029.60 |

At the time of the agreement the husband signed checks to the wife for $13,069.14 which she received.

Later she took the $1,600.00 in the safe deposit box in their joint names, without the consent of her husband. In reference to the mortgage which the husband in March, 1945, agreed to turn over to his wife, this mortgage was from Paul Hahn, the son of the parties, and his wife, to the appellant and the appellee. Although the husband originally agreed that this mortgage was to become the property of the wife, it appears that in August, 1948, the son desired to pay this mortgage off. The husband at that time refused to execute the release unless he received all of the principal. Although the wife argued with the husband he still demanded the money. Both parties finally signed the release and the appellant received the $4,500.

Code (1947 Supplement), Article 16, Section 40, Subsection 5, provides in part that the Court may decree a divorce *a vinculo matrimonii* "when the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for three consecutive years prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation." The parties here have lived separate and apart without any cohabitation for three consecutive years since the agreement. The question therefore arises as to whether this separation was voluntary. This cause for divorce was first enacted by Chapter 396 of the Acts of 1937 and has been before this Court in a number of cases.

Whether the separation of the parties was voluntary previous to the time of the above recited agreement is immaterial at this stage of the case. A separation may be involuntary when it first occurred and later may become voluntary. It was said in the case of *France v. Safe Deposit & Trust Co.*, 176 Md. 306, at page 326, 4 A. 2d 717, 726: "So that a separation may be voluntary at the inception of the physical separation and remain so throughout the required period. Or it may begin at any time after the physical separation, when the parties manifest agreement in a common intent of not living together again, but in that case it must continue without

interruption for five years (now three years) from the time of the agreement, before either spouse is entitled to a divorce under the statute." *Campbell v. Campbell,* 174 Md. 229, 198 A. 414, 116 A. L. R. 939.

In *Campbell v. Campbell, supra,* the first case before this Court after the enactment of the statute, the husband sought a divorce from his wife on the ground of voluntary separation for a period of five years, the statute then specifying the term as five years instead of the three at present. The testimony showed that on July 24, 1925, the parties entered into a separation agreement. On October 24, 1928, the husband instituted a suit for an absolute divorce on the ground of an involuntary separation for more than three years, alleged to have been caused by his wife's cruelty. In that suit the wife denied the allegation of cruelty on her part and charged her husband with brutality and adultery and stated that she and her husband were living separate and apart under the agreement of July 24, 1925. The husband's former bill for divorce in that case was dismissed. In affirming the decree granting the husband a divorce in the latter case and finding that the separation of the parties had been voluntary, this Court said 174 Md. at page 239, 198 A. at page 418: "However difficult it may be to reconcile the positions then assumed by the parties with their present contentions in regard to the effect of the separation agreement, we have to consider the fact that, since the dismissal of the 1928 suit, the parties have continued for nine years to live separately and to recognize the agreement as operative."

This Court has many times held that in the interpretation of the statute now before us the word voluntary "connotes an agreement". *Beck v. Beck,* 180 Md. 321, 323, 24 A. 2d 295, 296; *France v. Safe Deposit & Trust Co., supra,* 176 Md. at page 326, 4 A. 2d at page 726; *Kline v. Kline,* 179 Md. 10, 15, 16 A. 2d 924; *Nichols v. Nichols,* 181 Md. 392, 394, 30 A. 2d 446; *Foote v. Foote,* 190 Md. 171, 179, 57 A. 2d 804, 808. It has been often contended in this Court that the Legislature in the enact-

ment of the statute under consideration did not intend that an agreement of separation was necessary between the parties, but only that the parties voluntarily live separate and apart for the requisite time. See Article on Voluntary Separation, Maryland Law Review, February, 1943, Vol. VII, No. 2, page 146. That question is not before us in this case because the husband in his testimony here admitted that an agreement was entered into and set up the separation agreement as a defense to his wife's former suit. The wife, although she, under cross-examination, stated that there was no agreement, evidently meant there was no formal written agreement between the parties. She, however, testified to the separation and to the property settlement between the parties pursuant to the separation agreement. We are therefore of opinion that as the wife alleges in her bill a voluntary separation for three years and as the husband himself admits the separation agreement, which has been carried out as far as the separation of the parties is concerned, the Chancellor was correct in granting the wife a divorce on the grounds of voluntary separation.

It is true that in October, 1947, she filed a bill of complaint for a divorce *a vinculo matrimonii* on the grounds of abandonment.

In the case of *Campbell v. Campbell, supra,* the Court did not decide that the filing and dismissal of a previous suit was a bar to any claim for voluntary separation before that date, but held that since 1928 the parties had continued for nine years to live separately and to recognize the agreement as operative.

In the case of *Nichols v. Nichols, supra,* the husband filed a bill for a divorce on October 22, 1941, on the grounds of voluntary separation which he alleged took place on October 18, 1936. The wife answered the bill denying the allegation and averting that on the contrary the husband abandoned her on October 18, 1936, and in her answer asked for alimony and counsel fees. The wife had previously filed on December 17, 1936, a suit for divorce alleging abandonment and desertion and ask-

ing for alimony *pendente lite*. The divorce was denied by the Chancellor and apparently no appeal was taken. This Court said in the latter case filed by the husband 181 Md. at page 399, 30 A. 2d at page 449: "However, the wife's very act in filing the suit at all, and filing it as promptly as she did, shows conclusively that these parties at that time were not 'voluntarily living separate and apart', as prescribed by the statute." In the *Nichols* case, however, the husband asked for the divorce on the grounds of voluntary separation and the voluntary separation was denied by the wife in her answer alleging abandonment and desertion on her husband's part. Her previous suit for abandonment was held to be corroboration of her claim that the separation was not voluntary. Here, however, the wife first sought the divorce on the ground of abandonment. The husband in his answer in that case alleged the voluntary separation agreement as a defense and that is just what the wife is claiming here. The mere fact that in the meantime, after the voluntary separation agreement was entered into, she claimed abandonment by her husband should not estop her from reliance on the separation agreement, particularly as the Chancellor denied her the divorce on the ground that the parties had entered into a voluntary separation on which she is now relying.

The appellant alleges that there is not sufficient corroboration to grant the divorce in this case. Code (1939), Article 35, Section 4, provides in part: "In suits * * * for the purpose of obtaining a divorce * * * no verdict shall be permitted to be recovered * * * upon the testimony of the plaintiff alone * * * testimony in corroboration of that of the plaintiff shall be necessary." In the instant case the wife claims a voluntary separation. The separation agreement was testified to by the husband. A disinterested witness, Catherine Duvall, testified that in the past three years the parties have not lived together. This Court has announced the principle that the corroboration required by the statute to support the testimony of the plaintiff in a divorce suit need not go

to every particular of the case. It is considered sufficient if it gives substantial support to the plaintiff's testimony of material and controlling facts. *Jacobs v. Jacobs,* 170 Md. 405, 409, 185 A. 109; *Hockman v. Hockman,* 184 Md. 473, 477, 41 A. 2d 510.

Acts of 1947, Chapter 220, Code (1947 Supplement), Article 16, Section 42A, provides:

"Whenever a Court shall grant a divorce *a mensa et thoro* or a divorce *a vinculo matrimonii,* it shall have the power to hear and determine all questions which may arise between the parties to such proceeding in connection with the ownership of personal property (except chattels real) held, possessed or claimed by either or both of them, and shall have the power to make a division of such property between them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the Court may deem proper."

The Chancellor found that because the husband, in his original agreement, agreed that the wife should have the $4,500.00 mortgage which she did not receive and the proceeds of which were turned over to him, the wife should be allowed this sum of $4,500.00 less the $1,600.00 which she took from the safe deposit box. Although the part of the agreement as to voluntarily living separate and apart was lived up to by the parties, it is evident that the part of the agreement relating to property settlement was changed after it was originally made. The wife refused to buy the house and board and room her husband. She took $1,600 from the safe deposit box. The husband refused to release the mortgage. Although in the original agreement the husband agreed to assign the $4,500.00 mortgage to his wife when the son desired to pay it off the husband refused to sign the release unless he received the money. Although the wife (who was then represented by independent counsel) seriously objected, the husband did not release it without the receipt of the money and this arrangement was consummated. There is nothing in the record to show that the mortgage was due or over-due or that the son and his wife were

legally entitled to the release at the time the $4,500.00 was offered. The wife, therefore, by her assent to the husband's terms as to the release of the mortgage, waived that part of the settlement agreement and is therefore not entitled to receive any part of it, by her own agreement. We therefore hold that the wife is entitled to a divorce *a vinculo matrimonii* on the ground of a voluntary separation, with costs. She is not entitled to any further payments. No alimony or counsel fees are requested in the wife's bill. The cause will be remanded for the passage of a decree to conform with this opinion.

> *Decree affirmed in part and reversed in part, and cause remanded for the passage of a decree to conform with this opinion. Costs to be paid by the appellant.*