## BENSON *v.* BENSON
[No. 119, October Term, 1953.]

*Decided June 8, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William S. Brucker,* with whom was *Jerome B. Wolff* on the brief, for the appellant.

*Robert C. McKee* and *James C. L. Anderson* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree dismissing a wife's bill for divorce on the ground of voluntary separation for more than three years. The parties were married in Towson on July 1, 1944, and there are no children of the marriage. Some time later, evidently upon his return from military service, they went to live with his parents on a two-hundred acre farm in Baltimore County. He was employed on a night shift; she was also employed. She testified to increasing friction with her mother-in-law.

Around Easter, in 1949, the wife begged him to establish a separate home, and told him she couldn't "take it any more." She suggested that they live elsewhere on the farm. He said he would "have to talk to his mother first", and kept putting her off. Finally, on July 29, 1949, she packed up her things and asked him to drive her to her sister, who lived about five miles

away. He did so. They have not lived together or cohabited since that date. On the ride, the wife said she was sorry "it worked out like this". The husband said: "Do you see any way out?" She replied: "Right now I don't." She testified he said he couldn't see it any other way. "We couldn't figure any other way out; we said 'we will try it this way'." The wife's brother-in-law testified that Mr. Benson told him, that same day, that "it seemed to be the only solution for now." Mr. Benson did not deny driving his wife and her belongings to her sister's, nor did he deny making the statements attributed to him. His testimony was simply that he never agreed to her leaving.

The only effort at reconciliation made by the husband was in January, 1951, on the wife's birthday. At that time she was living with a Mrs. Miller in Baltimore City, about ten miles from the farm. His reply to a question as to what he said to her then, was "just as she said. I asked her if anything could be worked out, to come back" to the farm with his mother and father. The wife had testified he told her if she came back to the farm "they" would forgive her. She declined to go back on those terms.

The wife sought to introduce in evidence a written agreement, signed and sworn to by the husband on January 2, 1953, but not executed by her. The court ruled it out, although it contained a recital that "the parties hereto are now and have been for some time past living separate and apart", and provisions that they would thereafter live separate and apart and that neither would seek restitution or enforcement of conjugal rights. The document called for the conveyance by the husband to the wife of about fifteen acres of the farm, which had been conveyed to them by his parents on October 26, 1946, the payment to her of certain moneys, and the conveyance by her of the balance of the property to her husband. The agreement also recited that she intended to file suit for divorce, although the ground was

not stated. The agreement was not acceptable to the wife, and she had refused to sign it. It was offered on the theory that it was a sworn recognition by the husband of the state of affairs between the parties at that time, in the nature of an admission. For that limited purpose, we think it is relevant and should have been admitted. Cf. *France v. Safe Dep. & Tr. Co.*, 176 Md. 306, 317; *Nichols v. Nichols*, 181 Md. 392, 399; and *Hahn v. Hahn*, 192 Md. 561, 569.

As we have indicated, there is very little conflict in the testimony. The trial judge stated in his oral opinion that if he accepted without reservation everything the wife said, he would still be forced to the conclusion that there was not sufficient evidence to establish a voluntary separation. In short, he took the view that a case had not been made out as a matter of law. We think this was error, and involves a misconception of the statutory provision in question.

Code (1951), Art. 16, Sec. 33 authorizes an equity court to grant a divorce *a vinculo matrimonii* "when the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for three consecutive years prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation". It is clear, as we have repeatedly stated, that this language connotes more than a mere physical separation, for the word "voluntary" signifies willingness, and a "willing concert in the doing of the act". *Lloyd v. Lloyd*, 204 Md. 352, 357, and cases cited. In that case the separation was involuntary, in the sense that it was forced by the wife's condition of health and the incurable and progressive nature of the disease from which she suffered. There is no element of duress in the instant case. We need not consider whether the wife's action was unreasonable under the circumstances, or whether she might have made out a case of constructive desertion under the doctrine of *Fischer v. Fischer*, 182 Md. 281. She was content to waive whatever rights

she might have had on that ground. She made up her mind that she would not live with her mother-in-law any longer, even though that involved a termination of marital relations and support. The husband, equally firmly, declined to change the existing situation, even though this involved the loss of her services. It is perfectly clear that they agreed to the separation in 1949 and, continuously for the statutory period and down to the time of trial, chose to accept the obstacle presented by the disagreement as to living with his parents, as fatal to the resumption of marital relations. There was a common intent to terminate their cohabitation, at least for so long as the obstacle existed, and the husband acquiesced in the decision, although it lay within his power to remove the cause of disagreement.

The appellee argues that the solution accepted by the parties was only temporary and lacked "a common intent not to resume marital relations", within the language of *France v. Safe Dep. & Tr. Co., supra,* repeated in *Foote v. Foote,* 190 Md. 171. In the context of the *France* case, the language quoted was used in contradistinction to a physical separation for business or pleasure "with no intention of affecting their marital relationship". We think the fact that the parties in the instant case did not rule out the possibility of a reconciliation under other circumstances did not alter the finality of their common determination not to live together under the circumstances then existing, which have continued to the present time and will doubtless continue until the death of the parents. Undoubtedly one of the reasons for the three-year period prescribed by the statute is to allow time for reconsideration. It was recognized in *Hahn v. Hahn, supra,* that an agreement need not be formalized by a writing, and we see no reason to qualify the broad language of the statute by importing into it a requirement that a separation, by common consent of the parties, would lose its voluntary character because of the mere possibility that it may

be terminated upon the happening of a condition subsequent.

We find nothing in the holdings of the decided cases at variance with this conclusion. In the *France* case it was clear that the wife always expected to return, but found it impossible, due to the state of her health and the husband's refusal to furnish her passage money. In the *Foote* case the only question decided was as to the award of alimony after a decree based on voluntary separation. In the *Hahn* case, it was held that the wife was entitled to a divorce on the ground of voluntary separation, although she had first filed a suit on the ground of abandonment. In the *Lloyd* case the wife was in no condition to decline the nursing care of herself and her infant child, offered by her parents. In *Campbell v. Campbell*, 174 Md. 229, the separation was originally due to the wrongful act of the husband, but it was held that her tacit recognition of the situation, as evidenced by an earlier written agreement, justified a decree on the ground of voluntary separation. See also a note on the Maryland cases in 7 Md. L. R. 146.

We think the testimony of the wife, corroborated by that of her brother-in-law and virtually undisputed by the husband as to the material facts, plus the testimony as to the single abortive effort at reconciliation and his admission contained in the sworn statement of the incomplete agreement as to a property settlement, make out a case of voluntary separation for the statutory period, without reasonable expectation of reconciliation.

> *Decree reversed and case remanded for the passage of a decree not inconsistent with the views expressed herein, costs to be paid by the appellee.*

BRUNE, C. J., delivered the following dissenting opinion, in which COLLINS, J., concurred.

Our difference with the majority opinion is based upon the construction heretofore placed by this Court on the statute authorizing divorces on the ground of voluntary separation and the application of that construction to the evidence in this case, as we see it.

Voluntary separation was first made a ground of divorce in 1937, and the first case to come before this Court dealing with it was *Campbell v. Campbell*, 174 Md. 229, 198 A. 414, decided in 1938. That case involved a separation which had originally been caused by the fault of one party and which later become voluntary on both sides. The next case to deal with the subject, and the first to undertake to define the kind of intention required to satisfy the statutory requriement, was *France v. Safe Deposit & Trust Co.*, 176 Md. 306, 4 A. 2d 717 (1939), in which, after referring to the statute and the *Campbell* case, the Court said:

> "As used in the Act and construed in that opinion, a voluntary separation is a physical separation of the parties, by common consent with a common intent not to resume marital relations. It does not mean a mere physical separation where one of the spouses for business or pleasure leaves the other, intending to return, and with no intention of affecting their marital relationship * * *."

The opinion next pointed out that the separation might be voluntary at the very inception of the physical separation and might remain so throughout the entire statutory period [then five years, now three], and then went on to say:

> "Or it may begin at any time after the physical separation, when the parties manifest an agreement in a common intent of not living together again, but in that case it must continue without interruption for five years from the time of the agreement, before either spouse is entitled to a divorce under the statute."

The first of the above quotations from the *France* case was repeated substantially *verbatim* in *Foote v. Foote,* 190 Md. 171, 57 A. 2d 804; and the second was quoted with approval in *Hahn v. Hahn,* 192 Md. 561, 64 A. 2d 739.

In the present case the wife testified that at the time of the separation the parties said, "We will try it this way." That hardly measures up to "a common intent not to resume marital relations" or "a common intent of not living together again." The majority adopts the view that the finality of the parties' "common determination not to live together *under the circumstances then existing*" (emphasis added) is enough to satisfy the requirement of the statute; and by so holding departs, we think, from the test as to intention which is stated in the *France* case and quoted in the *Foote* and *Hahn* cases.

Although the five-year or three-year waiting period unquestionably contemplates an opportunity for reconsideration and necessarily makes any voluntary separation experimental to some extent, that fact was as evident when the *France* case was decided as it is today, and must have been in the mind of the Court when the requirement as to the intent to break marital relations permanently was stated in that case. It may also be conceded that on its facts, the result of the *France* case could have been reached without construing the statute as requiring so drastic an intent not to resume marital relations as was there said to be required, and it may further be conceded that the statute could properly have been construed as requiring a less drastic or permanent intent never to resume marital relations in the future; yet the question as to what kind of a voluntary separation would meet the requirements of the then new statutory provision seems to us to have been essential to the determination of the case. Consequently, we find ourselves unable to reach the view that the definition contained in the *France* case and re-

peated (perhaps unnecessarily) in the *Foote* and *Hahn* cases and heretofore not questioned by this Court, was simply *obiter dictum* and hence is not a construction of the statute entitled to our regard.

Since *Alexander v. Worthington,* 5 Md. 471, the rule which has been recognized in this State, regardless of which way any particular case may have been decided upon application of the rule, is that: ."All that is. necessary in Maryland to render the decision of the Court of Appeals authoritative on any point decided, is to show that there was an application of the judicial mind to the precise question adjudged * * *." See also *United Railways and Electric. Company of Baltimore v. Mayor and. City Council of Baltimore,* 121 Md. 552, 88 A. 617; *McGraw v. Merryman,* 133 Md. 247, 104 A. 540, and cases therein cited and *Baltimore City v. Allegany County,* 99 Md. 1, 57 A. 632.

The case last cited brings out another point which seems pertinent and to reinforce our view. This is that when the Legislature re-enacts a law in the same words which have already been construed, "it is presumed they had in mind, and intended it to bear, the interpretation given to it by this Court * * *." What is now Section 33 of Article 16 of the Code (1951) has been amended several times since the voluntary separation clause was added in 1937 and since the *Campbell* and *France* cases were decided, and one of these amendments (Ch. 240 of the Laws of 1947) amended the voluntary separation clause itself by shortening the period from five years to three. None of these amendments, however, changed any other term of the voluntary separation clause. What was said in *Rabbitt v. Gaither,* 67 Md. 94, 8 A. 744 (with appropriate allowance for the number of years during which the pertinent statute has been in force) appears directly applicable:

> "They [the courts] can construe a statute, but having once clearly and definitely done so, and that construction having been acquiesced

> in and acted upon for more than forty years,
> it is for the Legislature to change the statute,
> rather than for the courts now to change its
> construction, even if they should deem it er-
> roneous."

Judge Markell, in delivering the opinion of the Court in *Sonnenburg v. Monumental Tours,* 198 Md. 227 (at 233), 81 A. 2d 617, (at 620), succinctly stated:

> "Decisions of this court construing the stat-
> ute become a part of the statute and continue to
> be so unless and until changed by statute."

See also *McKee v. McKee,* 17 Md. 352, *Herbert v. Gray,* 38 Md. 529, and *Gibson v. State,* 204 Md. 423, 104 A. 2d 800.

To summarize: The evidence shows, we think, that the separation which occurred on July 29, 1949, was voluntary on both sides and that it was understood by both parties to be much more than a casual separation, such as would result from a business or vacation trip by one of the parties, that it was expected to have the effect of suspending their marital relations and that it was realized that it might lead to a permanent separa- tion. But the testimony that the parties saw no other solution "for now" and the wife's own testimony that they said on the day of the physical separation that "we will try it this way" seems to us not to establish that the separation was intended as more than a tem- porary or trial solution of their marital difficulties, and seems to fall short of establishing the existence at that time of a common intent not to resume marital relations. It is our further view that the evidence does not estab- lish such a mutual intent on any date prior to that of the attempted reconciliation in January, 1951, which was less than three years prior to the filing of the bill. Consequently, in our view, the test laid down in the *France* case in the construction of the statute is not met. Since, for the reasons stated above, we consider that construction binding, we are of the opinion that the decree dismissing the wife's bill should be affirmed.