## MISNER v. MISNER

[No. 37, October Term, 1956.]

*Decided December 11, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Henry A. Babcock,* with whom were *Oliver C. Sard* and *Green & Babcock* on the brief, for the appellant.

Submitted on brief by *J. Ambrose Kiley, J. Lloyd Niles* and *Kiley & Niles* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Lorraine L. Misner, appellant, from a decree granting a divorce *a vinculo matrimonii* to her husband, Robert E. Misner, appellee, awarding custody of the minor children to the appellant with a right of reasonable visitation by the appellee, and further ordering that the appellee make an allotment from his Coast Guard pay for the maintenance of said minor children of $77.10 per month. Appellant had been receiving an allotment of $176.90 each month.

The appellee, a member of the United States Coast Guard, and the appellant were married on October 26, 1948, in Washington, D. C. As a result of said marriage two children were born, a girl, Patricia Ann, born February 19, 1950, and a boy, Eugene Earl, born after the separation of the parties, on October 3, 1951. After the marriage the parties lived in Elizabeth City, North Carolina, until May, 1949, when they moved to the vicinity of New London, Connecticut, where they lived until March 12, 1951.

On February 23, 1955, the appellee, then living in Washington, D. C., filed a bill of complaint against the appellant alleging the marriage of the parties; the birth of the children, who were in the custody of their mother; that on March 12, 1951, while the parties were living in Poquonnock Bridge, Connecticut, they separated by voluntary and mutual agreement; that such voluntary separation had continued without interruption to the time of the filing of the bill, and, by reason thereof, there was no reasonable expectation of reconciliation; and that there was no property to be adjudicated in the case. He asked that he be divorced *a vinculo matrimonii* from the appellant; that the custody of the minor children be continued in the appellant, reserving to him the rights of reasonable visitation; and for other and further relief. An answer was filed by the appellant in which she denied that the parties separated voluntarily, but stated on the contrary that the appellee for a long time prior to the separation had treated her with such great cruelty and violence that to protect herself from grievous bodily harm she was compelled on March 12, 1951, to leave their home in Connecticut and return to the home of her mother in Montgomery County, Maryland, where she has

since resided. She asked that the bill of complaint be dismissed.

The appellee testified before the examiner that his wife lived in Montgomery County, Maryland, and had been living there for the past three years. He further testified to the marriage aforesaid, the birth of the children, and that he was satisfied that his wife was a fit and proper person to rear the children. He said that about ten or twelve days prior to March 12, 1951, they agreed to separate and that his wife left on that date. He further said: "I can't remember whether she had her ticket or bought it when we got to the station, but she packed and as I remember, I helped her pack. I helped carry the bags and carried Patty up, and put her on the bus." He said the separation was by agreement of his wife, there was no argument or bitterness surrounding the separation, and there was no hope of reconciliation. On cross-examination he said that he had been living in the District of Columbia since January 4, 1954. His wife had been living in Montgomery County during that time. He had never seen Eugene, who was then four years of age, until the day of the hearing. His wife had never refused him permission to see the children. After the separation he went to live at the Coast Guard training station in Groton, Connecticut, where he remained until May, 1951, when he went to Portland, Maine. He admitted that, although there was no bitterness at the time of the separation, prior to that time there was some "general dissent". His wife was not physically cruel to him. He admitted that he had previously filed in the State of Maine a suit for divorce against his wife, on the grounds of extreme cruelty and that he did not state in his bill of complaint there that they had been separated by mutual agreement and consent. He further admitted that while they were living in North Carolina and in New London he drank to excess at times. When asked whether he was physically cruel or abusive to his wife, he said: "Not to my way of thinking." He denied that he ever hit her with his fists. He further admitted that his wife was pregnant at the time of the separation in March, 1951, and that she was in need of an operation. He admitted that a large German shepherd dog, kept in the small apartment occupied

by the parties, was the cause of some contention between his wife and him. He said he never intended to avoid the responsibility of supporting his children.

James A. Murphy, Jr., testifying before the examiner for the appellee, stated that he had known him for approximately eighteen months, that he saw him frequently during that period, and knew the parties were not living together at the time of the hearing.

Patricia M. Pendleton, by interrogatories sent to her in Spenard, Alaska, stated that her relationship to the parties was close. She frequently visited in their home. She knew that at the present time they did not live together as husband and wife, and ceased to so live together in the early spring of 1951. When asked the circumstances under which they ceased living together, she replied: "Mr. and Mrs. Misner ceased living together because of constant and incessant bickering, argument and disputes which were frequent and almost incessant." When asked whether the separation was mutually agreed to between the parties, she replied: "In my opinion, and based upon the knowledge of the circumstances of the separation between the parties, they did not mutually agree to separate; the defendant walked out of the house; shortly thereafter, it is my understanding that they agreed to remain voluntarily separated." An objection was made to the testimony after the last semicolon in the preceding sentence.

The appellant testified before the examiner that, except for the times when her husband was drinking, "they got along all right" in Elizabeth City. After they moved to Connecticut her husband drank to excess and was cruel to her, usually sexually, when he was under the influence of drink. In March, 1950, after Patricia was born in February, 1950, and before she recovered from the childbirth her husband insisted upon marital relations with her. When she refused he kicked her in the back. About three months after Patricia was born it was necessary for her to have an operation for some female disorder. She said the day the stitches were removed she refused to have marital relations with him and he "hit me every place he could". She denied that they mutually agreed to separate and said she was compelled to leave

him because of his treatment of her, which did not improve after he struck her with his fists. About the first of March, 1951, she decided that she could not continue to live with him any longer. She was receiving an allotment from him of $176.90 per month. After she left him she had a major operation in June, 1952. On cross-examination she admitted that this second operation was not caused by anything done by her husband. She denied that they ever agreed to separate and go their separate ways. She did not know why Mrs. Pendleton said that she understood that they had agreed to remain voluntarily separated. At the time they separated she traveled by train. Her husband helped her to the bus and from the bus she got on the train alone. She did not ask him for money for transportation.

By Code, 1951, Article 16, Section 33, a divorce *a vinculo matrimonii* may be granted, among other reasons, "* * * when the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for three consecutive years prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation; * * *." As repeatedly stated by this Court, this language means more than a mere physical separation, for the word "voluntary" signifies willingness, and a "willing concert in the doing of the act". *Benson v. Benson,* 204 Md. 601, 605, 105 A. 2d 733, and cases there cited. Of course, a separation may be involuntary when it first occurs and later may become voluntary, or it may begin at any time after the physical separation, if the parties manifest agreement in a common intent not to live together again. In that case, however, it must continue without interruption for three years from the time of the agreement before either spouse is entitled to a divorce under the statute. *Hahn v. Hahn,* 192 Md. 561, 566, 567, 64 A. 2d 739, and cases cited.

It is provided by Code, 1951, Article 35, Section 4, among other things, that, in bills for the purpose of obtaining a divorce, a decree shall not be entered upon the testimony of the plaintiff alone, "but in all such cases testimony in corroboration of that of the plaintiff shall be necessary." Of course, the evil aimed against by this provision is collusion,

404

and accordingly, when the whole case precludes any possibility of collusion, only slight corroboration is required. *Kelsey v. Kelsey,* 186 Md. 324, 328, 46 A. 2d 627, and cases there cited.

The instant case presents a situation where there is no corroboration of the appellee's testimony. The wife flatly contradicts him. The only possible claim for corroboration would be the statement of Mrs. Pendleton that, when the appellant left, she and her husband did not mutually agree to separate but shortly thereafter it was her understanding that they agreed to remain voluntarily separated. The understanding of Mrs. Pendleton appears to be pure hearsay and was not admissible. *Buch v. Hulcher,* 180 Md. 309, 312, 23 A. 2d 829; *Bright v. State,* 183 Md. 308, 319, 38 A. 2d 96, and cases there cited. There is no evidence that the appellant and appellee ever met or ever discussed their marital relationship after the original separation on March 12, 1951. The husband's claim is that the voluntary separation occurred on that date. He admitted that he went to Maine in May, 1951, and filed a suit against his wife for divorce on the grounds of cruelty. This is utterly inconsistent with his contention that when they separated in March, 1951, the separation was voluntary within the meaning of our statute.

*Decree reversed, with costs, and bill of complaint dismissed.*