## HUGHES *v.* HUGHES

[No. 229, October Term, 1956.]

*Decided June 3, 1957.*

The cause was argued before COLLINS, HENDERSON, HAM-MOND and PRESCOTT, JJ., and McLAUGHLIN, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Eugene Hettleman,* with whom was *Joseph Hettleman* on the brief, for appellant.

*William D. Schaefer,* with whom were *Norman V. Waltjen, Jr.,* and *Mary Arabian* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court No. 2 of Baltimore City, dismissing a bill for divorce filed by a husband on the ground of voluntary separation, and awarding permanent alimony of $15.00 per week to the wife, on her amended cross-bill, which alleged adultery and desertion, but did not pray a divorce.

The case is somewhat unusual, in that the husband seeks a reversal on the ground that he is entitled to a divorce on the evidence presented, but does not contest the allowance or amount of alimony. At the conclusion of the testimony on January 14, 1957, the Chancellor, in an oral opinion, held that a voluntary separation had not been proven, and that in any event the husband was not entitled to a divorce because of his admitted adultery, applying the doctrine of recrimination. However, when our decision in *Matysek v. Matysek,* 212 Md. 44, holding that recrimination is not a defense in a suit for divorce on the ground of voluntary separation, was handed down a few days later, the Chancellor granted a petition for rehearing. After hearing, he declined to modify the decree, on the ground that there was insufficient corroboration to establish a voluntary separation.

The testimony is scanty, but virtually uncontradicted. The parties were married in 1915, and one child was born in 1916,

a daughter, now Mrs. Richard · Weekly. The parties separated in September, 1926, when living on Roland Avenue in Baltimore City. The husband testified that they could not get along together, so they came to an agreement, whereby she was to stay in the house and keep the child, and he would pay $11.00 a week for the child's support. He paid this until the child was eighteen. "She told me she didn't care what I done, for me to go my way and she would go her's." She told him "She didn't want anything for herself." In the last thirty years, she had never asked him for anything. One cause of their disagreement was that she was "running around" with other men and once "I caught her out in a car with another man." On cross-examination, he admitted he had been living in Catonsville since 1941 with a Mrs. Noreen Kroner, in a house, title to which is in the names of Samuel Hughes and Noreen K. Hughes, as tenants by the entireties. He admitted that he and Mrs. Kroner had had a number of children, some of whom are married. The oldest of these children was born in 1927, but the date of birth was not established. He had never been married to anyone except the appellee. The appellee had objected to his seeing Noreen Kroner before their separation in 1926. When they separated he took his clothes. "She helped me pack my clothes." He took her the $11.00 a week himself, sometimes he sent it by a friend, Mr. Marr. He earns $60.00 a week, "take home" pay.

Mr. Edwin Marr testified he was a frequent visitor to the Hughes home when the parties were living together. He worked with Mr. Hughes as an automobile mechanic's helper. "We worked shifts. One would stay on one night, and one would the next night. * * * whichever was on, the other one would go to his house and his wife would pack a lunch for us. * * * I was there one night and she said she was tired of fooling around and wished one would go one way and the other, the other. I think they finally made an agreement. I went with him when he got his clothes. * * * They said they were going to separate, one going one way and one the other." This was in the fall of 1926. Afterwards, he frequently took money to her to pay for the daughter, generally $11.00. She often told him "All she wanted was support for the child. She

didn't want nothing from him. * * * She said she was getting along good like she was, going her way", and "she didn't want nothing to do with him." On cross-examination, he admitted she had made some remark about Noreen Kroner, but that was after the parties had separated.

The appellee did not testify or appear in court. A doctor's certificate was presented to the effect that she had suffered from "malignant hypertension with arteriosclerosis", since 1946. When he last saw her on December 31, 1956, her blood pressure was 196/100. "In view of the above, it would be unwise and detrimental to her health to appear in court as a witness."

Mrs. Weekly testified her mother was sixty years old, and had been under a doctor's care for some time, but continued to work in a brush factory, where she earned $46.00 a week. Her mother lived alone in an apartment. The doctor had advised her to stop working, but she worked every day. The witness was not asked anything about the separation thirty years ago, at which time she would have been ten years old.

Although the testimony is scanty, we think it was sufficient to establish a voluntary separation. If believed, the testimony of the appellant supports a mutual agreement, and it is corroborated by the testimony of the witness Marr, and by the fact that for thirty years the wife never expressed any desire for a reconciliation, or made any claim for her own support. Nor did she appear in court, although if she was able to work every day, there seems to be no good reason why she could not come to court. Her testimony could have been taken by deposition, if deemed necessary. The general denial in her answer cannot take the place of testimony.

If we may suspect that Mrs. Kroner played a larger part in the separation than the witnesses admit, there was no proof or inference of adultery prior to the separation. The cases seem to recognize that the existence of animosity, or even a legal ground for separation, is not necessarily decisive of the issue, in a case based on voluntary separation. Cf. *Matysek v. Matysek, supra,* where the authorities are carefully reviewed. *Miller v. Miller,* 178 Md. 12, was distinguished on the ground that there the wife merely acquiesced

456

in what she could not prevent, i. e. the husband's departure. The facts in the instant case fall into the pattern of *Benson v. Benson,* 204 Md. 601, and *Hahn v. Hahn,* 192 Md. 561. *Misner v. Misner,* 211 Md. 398, is distinguishable on the ground that there was a complete lack of corroboration, the husband had taken an inconsistent position in another proceeding, and the wife flatly contradicted his testimony. In *Lloyd v. Lloyd,* 204 Md. 352, the physical disability of the wife was a significant factor, negativing the reality of consent, which she denied in her deposition.

We have said that a divorce cannot be granted simply because it would be beneficial to the parties, *Lloyd v. Lloyd, supra; Smith v. Smith,* 198 Md. 630. Nevertheless, the benefits that may accrue from a severance of the marital tie in the instant case may extend beyond the parties and clear the way for the legitimization of issue, and the wife's action in amending her cross-bill to strike out the prayer for a divorce, without any claim of religious scruples, is not to be particularly commended. Perhaps she feared that if he were granted a divorce she would lose any right to alimony, but under the ground of voluntary separation, alimony may be granted even where the relief is sought by the husband. *Foote v. Foote,* 190 Md. 171, 180. Here, there was proof that, although the wife has supported herself for thirty years, her health is impaired to the point where she should not continue to work, and she has a prospect of heavy medical expenses. Under the circumstances, we are disposed to reverse the Chancellor's finding that voluntary separation was not made out, and grant the relief prayed in the bill, but to affirm the Chancellor's award of alimony to the appellee.

*Decree reversed in part and affirmed in part, costs to be paid by the appellant.*