# COURTNEY *v.* COURTNEY

[No. 214, October Term, 1956.]

*Decided June 7, 1957.*

The cause was argued before COLLINS, HENDERSON, HAM-MOND and PRESCOTT, JJ., and KINTNER, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*J. Francis Ford,* with whom was *Jeanne M. Crouse* on the brief, for the appellant.

*Julius G. Maurer,* with whom was *Edward J. Brannan* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

A husband appeals from refusal of the chancellor to grant him a divorce on the ground of mutual separation for three consecutive years.

Despite the grounds on which he sought the divorce, the husband's proof tended to show that the separation began when his wife constructively deserted him. It is agreed that in November, 1951, the couple sold the house in Baltimore in which they had lived for many years, divided the net proceeds, went their separate ways and have lived apart since that time, apparently without communication between them. He has not sought reconciliation nor proffered either a home or support. She has made no overtures toward reunion and has asked no support. The husband contends that the separation was voluntary from the beginning but that if it were not, it had become so more than three years before the filing of the bill. It is said by the husband that the wife "by her conduct has demonstrated, at least by silent acquiescence, her tacit consent to the separation."

The husband and wife differ diametrically on the material points. The chancellor believed the wife. His findings of fact were that the relations became strained in April, 1951, when the wife refused to sign a mortgage on the house so as to obtain money for a business venture of the husband, that the husband became enraged at his wife's refusal, left the common bedroom, wrote his wife a note which he left on the kitchen table, in which he said: "You better sign or I will leave you", and refused to talk to his wife, leaving the house early in the morning and returning late at night. The husband denied writing the note but the chancellor, who had an opportunity to compare the handwriting with handwriting admittedly that of the husband, believed the wife's testimony that the note was in the husband's handwriting and had been left for her. It may be that the husband's denial under oath of what the chancellor found to be a fact was a material reason for his belief in the wife's version of what occurred. In

any event, he found that the husband deserted the wife in April, 1951, and that he left his wife in November, when they sold the house, without providing, or intending to provide, a common abode.

It is clear that on the findings of the chancellor, the separation was not voluntary when it occurred. *Matysek v. Matysek,* 212 Md. 44, 48. In *Hughes v. Hughes,* 213 Md. 452, the husband's testimony showed voluntary separation and it was corroborated. There the chancellor was clearly wrong. A separation that was originally involuntary on the part of one spouse may at a later time become voluntary as to both spouses. *Campbell v. Campbell,* 174 Md. 229, 239; *Matysek v. Matysek,* just cited. The chancellor found no evidence that there had ever been any agreement of the wife to live separate and apart at any time after the original separation. He declared: "* * * the most that can be said is that the wife became resigned to a situation that was forced upon her." We think the record sustains the chancellor's finding. In *Miller v. Miller,* 178 Md. 12, the husband had separated from the wife without legal justification and they had continued to live apart for eight years, during which time neither made any effort to effect a reconciliation, although the husband contributed to the support of the wife. The Court said: "The separation was involuntary as to her, because she could do nothing to prevent it, she did not consent to it * * *." The husband in that case contended that the wife's consent to the separation could be inferred from her failure to woo him back to her. The Court rejected the contention, pointing out that the wife was the injured party and, as such, could not be prejudiced because of failure to attempt what apparently would have been a hopeless effort, and that "* * * it should not be assumed that because she failed to ask him to return she agreed to the separation." The Court added: "The duty of attempting to effect a reconciliation was upon the husband who without justification deserted his wife, not upon the wife whom he deserted." In the case before us, the chancellor pointed out that: "The wife had good reason to believe in the light of the conduct of her husband toward her from April of 1951 that her husband was adamant in

his determination to live apart from her. Any effort on her part to induce the husband to live with her would, according to her justifiable view, have been futile." She testified that she would have met any offer of reconciliation half way.

We think that no consent to the continued separation can be attributed to the wife because of her failure to seek support from the husband. He stopped making any provision for her support or for the maintenance of the house in which he continued to live, soon after his desertion of April, 1951, and when she requested that he continue it, he rudely refused. She went to work and supported herself and maintained the common household for a number of months, paying the household bills and the living expenses. The husband had been ill a number of times during their married life, having had various operations and each time the wife had worked to support the family while he was sick and convalescing. Having been independent when necessity demanded it all through their married life, it was not unnatural that she should have continued to work to support herself, as the testimony shows that she has since the separation.

The record fully supports the determinations of fact of the chancellor and, in our view, the legal results he found to follow those facts are beyond successful challenge.

*Decree affirmed, with costs.*