# VIRGINIA C. CARNEY *v.* EUGENE D. CARNEY

[No. 99, September Term, 1972.]

*Decided October 24, 1972.*

The cause was argued before THOMPSON, POWERS and CARTER, JJ.

*Stanley B. Frosh,* with whom were *Frosh, Lane & Edson* on the brief, for appellant.

No brief filed on behalf of appellee.

CARTER, J., delivered the opinion of the Court.

On December 12, 1969 the appellant, Virginia C. Carney, filed suit against the appellee, Eugene D. Carney, in the Circuit Court for Montgomery County seeking a divorce a mensa on the grounds of cruelty and constructive desertion. On October 22, 1971 the wife filed a supplemental bill requesting a divorce a vinculo, alimony,

child custody and support on the alternative grounds of constructive desertion or voluntary separation. The husband answered both bills and denied all material allegations thereof. The suit was heard before Judge John P. Moore who dismissed the supplemental bill for divorce and alimony, awarded custody of the children to the wife and required the husband to pay the sum of $200 a month for the support of each child. The Chancellor also required the husband to contribute $650 toward the cost of legal services rendered the wife in her suit for the custody and support of the children. The wife appeals from the decree.

## FACTS

The evidence in support of the wife's contentions consisted of her testimony and that of her friend, Mrs. Anna Brandborg. The evidence of the husband consisted of his testimony.

The testimony of both the husband and the wife was in substantial agreement concerning the circumstances surrounding their separation. Their testimony showed they were married in 1948 and lived together until February 18, 1970 when the wife left the home. There were two children born as a result of the marriage, namely Christine, age 13, and Michael, age 10. For sometime prior to March 1969, differences had developed between the parties concerning the wife's interest in biology, the out of doors and animals. She became much interested in these matters and the husband was not at all interested in them. He would not allow his wife to have pets in the home, much to her displeasure. In 1967 she became acquainted with Mr. and Mrs. Brandborg. Mr. Brandborg was connected with the Wilderness Society which is a non-profit conservation organization dedicated to the preservation of wilderness areas. The husband believed that the Brandborgs were exerting a considerable influence upon his wife in stimulating her interest in wildlife and animals. This situation provoked numerous ar-

guments between the parties including an argument over the wife's desire to take a new job with the Wilderness Society and to have dogs in the house. The wife testified that on March 2, 1969, during the course of a heated argument on this subject, her husband told her that "my friends (Brandborgs) were not welcome in the house, and, as a matter of fact, I could leave, but until such time as I could arrange to get out he wanted me to move out of the bedroom." At that time she did move out of the bedroom occupied by herself and her husband. Thereafter she slept on the sofa in the living room until her departure from the home about a year later on February 18, 1970. There were no sexual relations between the parties following this incident although the husband requested the wife to return to their bedroom on several occasions but she refused. In the course of the discussions between them during the later part of 1969, the wife advised her husband that he had better get a lawyer concerning their marital problems because she had already engaged one. After the incident in March 1969 and prior to his wife's departure, the husband told the wife that if their marriage was going to be terminated, she was the one who was going to have to do it. He admitted that because of his religious beliefs, he was opposed to divorce. However, he testified at a pendente lite hearing: "My wife is certainly free to do whatever she wants to. But I can't make myself do it [separate] on these grounds". At the trial he explained this testimony by saying that it was intended as "an admission on my part that I couldn't stop her". He testified he did not intend to approve his wife leaving their home. The wife testified that in her opinion her leaving on February 18, 1970 was agreeable to her husband. However, she did not disagree with her husband's testimony concerning the above recited circumstances surrounding her departure. She further testified that prior to February 18, 1970, he was aware of her intended departure. The wife admitted there was no physical harm done to her by her husband and that she was not fearful any such harm would be done to her.

At the time of the trial the husband's financial statement showed a gross monthly income of $1,700 derived principally from his salary as a public school teacher. His statement showed monthly deductions of taxes, insurance premiums, social security, etc. of $600 leaving a net monthly income of $1,100. The statement also showed monthly expenses consisting of payments on the home jointly owned by the parties, food, clothing, utilities, car expense, etc. amounting to $765.95 leaving a net monthly balance after expenses of $334.05. This sum did not make allowance for child support payments then in effect in the amount of $325 per month. The wife was employed by the Wilderness Society as operations manager at an annual salary of $13,000. Her income consisted of her salary plus a small unspecified monthly dividend from her half interest in 150 shares of AT&T stock.

The jointly owned assets of the husband and wife consisted of their home valued at $51,000, subject to a mortgage of $30,500 leaving a net joint interest of $20,500 and 150 shares of AT&T stock valued at $6,600. The husband's individual bank accounts totaled approximately $6,000. This sum was composed of the proceeds of a loan from a life insurance company in the amount of $3,000. Also included were two non-recurring items of a $1,000 tax refund and $800 paid him for special teaching services. There was further included the sum of $500 loaned him by his parents and $500 to $600 he had accumulated at the time of the separation.

## CONSTRUCTIVE DESERTION

The wife's first ground for divorce was constructive desertion. It was not pursued by her in prosecuting this appeal and is, therefore, considered as abandoned and not now before this Court.

## VOLUNTARY SEPARATION

The wife's alternate basis for seeking a divorce a

vinculo under her supplemental bill was founded on the fifth ground set forth in Md. Code, Art. 16, § 24. The statute provides in part:

> "* * * the court may decree a divorce a vinculo matrimonii for the following causes, to wit: * * * fifthly, when the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for eighteen consecutive months prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation; * * *"

In *Smith v. Smith,* 257 Md. 263 at p. 266, the Court of Appeals pointed out that the requirements for establishing voluntary separation as a ground for divorce under this statute are threefold, namely:

> "* * * [1] There must be an express or implied *mutual agreement* between the parties to separate accompanied by a mutual intent not to resume the marriage relationship. * * * [2] The parties must voluntarily have lived separate and apart without cohabitation for at least 18 consecutive months. * * * [3] Proof that the separation is beyond any reasonable hope of reconciliation is the third requirement." (emphasis supplied)

Under the evidence in the instant case, the parties did not cease living under the same roof until the wife's departure on February 18, 1970. In these circumstances it has been held by the Court of Appeals and this Court that the separation contemplated by the statute does not occur until the parties cease living in the same house even though they may have ceased sexual relations prior to that time. See *Lillis v. Lillis,* 235 Md. 490, 494-496; *Jackson v. Jackson,* 13 Md. App. 725. The mutual agreement of the parties to separate mentioned in the first requirement as set forth in *Smith, supra* must therefore relate to the date when the separation recognized by the

law occurred or February 18, 1970 and not prior thereto.

The evidence relevant to the husband's agreement to the actual separation on February 18, 1970 shows that prior to that date he had retracted his previous order of March 2, 1969 that his wife leave the bedroom and ultimately the home. It is conceded by the wife that between March 2, 1969 and February 18, 1970, her husband on at least two occasions [he testified on more than two] requested that she return to the marital bedroom and share it with him but she refused. The husband testified that after he was informed by his wife, in the later part of 1969, that she had secured a lawyer regarding their marital difficulties and he had better do likewise, he considered that he was powerless to prevent her from leaving the home. In these circumstances the Chancellor found that the separation on February 18, 1970 was not accomplished with the voluntary agreement of the husband. He further found that in failing to continue to request his wife to stay after she informed him she had engaged an attorney, the husband was merely acquiescing in his wife's determination to leave which he was powerless to prevent.[1]

The wife's contention that the husband's offer of reconciliation cannot adversely affect her right to a divorce because of the provisions of Md. Code, Art. 16, § 26A is without merit. This statute provides:

> "In all actions for divorce an offer of reconciliation or an attempt to reconcile by one spouse without the concurrence of the other spouse shall not be available as a defense to a divorce nor in and of itself be a bar to a divorce; nor shall the refusal of a spouse to accept an offer of reconciliation made by the other spouse or the rejection by a spouse of any attempt at reconciliation made by the other spouse be avail-

---

1. For authority to the effect that acquiescence is not tantamount to consent or an agreement on the part of the party acquiescing, see *Rhoderick v. Rhoderick*, 224 Md. 478, 481; *Moran v. Moran*, 219 Md. 399.

able as a defense to a divorce nor in and of it-
self be a bar to or a ground for a divorce. (1965,
ch. 147; 1968, ch. 636.)"

These provisions are not applicable to the facts of the
instant case. Here the husband's offers of reconciliation
are not employed for the purpose of *barring* the wife's
right to divorce or as a *defense* thereto. The separation
of the parties had not even taken place at the times the
husband's offers of reconciliation were made in 1969.
As heretofore stated, the separation did not begin until
the wife left the home in February, 1970. Prior to the
time this statute (Art. 16, § 26A) was passed in 1965
(Chapter 147 of the Acts of 1965), the law as enunciated
by the Court of Appeals was to the effect that an offer
of reconciliation, made after a voluntary separation had
taken place, destroyed the voluntary character of the
separation. See *Chalkley v. Chalkley,* 236 Md. 329 (1964);
*Moran v. Moran,* 219 Md. 399 (1959). The plain meaning
of the language of this statute when interpreted in the
light of the law existing at the time of its enactment
shows that the legislative purpose, as applied to volun-
tary separations, was to alter the prior law so as to
prevent an offer of or attempt at reconciliation from de-
stroying the status of an existing voluntary separation.
However, the husband's offers in the instant case were
not being employed for the purpose of destroying an
existing voluntary separation. On the contrary, the offers
here are used for the sole purpose of showing that prior
to and at the time of the separation (February 18, 1970),
the husband did not want the separation nor agree to
it. The offers were clearly relevant for this purpose. We,
therefore, conclude that Art. 16, § 26A is not applicable
to the facts of this case.

The wife also contends the mere fact that the husband's
religion prevented him from agreeing to a divorce should
not prevent the court from finding that the separation
in the instant case was voluntary. We hold that this
contention is also without merit for two reasons. Firstly,

the husband testified that he considered the grounds existing at the time of the separation insufficient in themselves to justify the breakup of his home and that he could not agree to the separation for this reason. Secondly, even if we assume that the husband's religious beliefs did influence his decision not to agree to the separation, this does not alter the fact that for reasons sufficient to him, whatever they may have been, he did not agree. The reasons for his refusal are not a matter with which the statute, creating the grounds of voluntary separation as a cause for divorce, is concerned. Under the provisions of Art. 16, § 24, *both parties must voluntarily agree* to the separation in order to create a voluntary separation as a ground for divorce. See *Misner v. Misner*, 211 Md. 398; *Benson v. Benson*, 204 Md. 601.

We hold, therefore, that the evidence was legally sufficient to permit the Chancellor to conclude that the husband did not voluntarily agree to the separation on February 18, 1970, and that he was not in error in denying the wife a divorce on the ground of voluntary separation for this reason.

## ALIMONY

In order for a court of equity to award alimony to a wife either under the provisions of Md. Code, Art. 16, § 2 or 3, she must establish her right to either a divorce a mensa or a vinculo. See *Blumenthal v. Blumenthal*, 258 Md. 534; *Dackman v. Dackman*, 252 Md. 331. Since we have already ruled the wife was not entitled to a divorce, it follows the Chancellor was not in error in refusing her alimony.

## CHILD CUSTODY AND SUPPORT

The Chancellor's award of custody of the two infant children to the wife and mother with reasonable visitation rights to the father is not contested by the wife nor by the husband. The Chancellor in his final decree increased the child support in the temporary order of $325

a month for both children to $400 per month. The wife contends this amount is inadequate. In fixing the amount the Chancellor sets forth in his opinion that he considered the father's financial condition, his net income and his total expenses. He also stated that he considered the demand of the wife that the sum of $1,090 per month be allowed for the support of the two children. He found that some of the items listed in the wife's demand were excessive including the amount claimed for the children's recreation and the proportion of car expenses allocated to them. In *Chalkley v. Chalkley*, 240 Md. 743, the Court of Appeals in speaking of the criteria to be applied in fixing the amount of child support said at page 744:

> "* * * Ordinarily, the awarding of alimony and support [for children] should be based on the earning capacity and financial worth of the husband and father and the circumstances of the * * * wife and children as of the time of the award. * * *"

See also *Bowis v. Bowis*, 259 Md. 41, 43; *Kapneck v. Kapneck*, 235 Md. 366, 368.

Applying the standard set forth in *Chalkley, supra* to the evidence, we conclude that the Chancellor was not clearly in error in fixing the support payment required of the father at $400 a month for both children.

## COUNSEL FEES

The counsel fee charged by the wife's attorney for representing her and the children in this suit was $2,820. This amount was based on 47 hours of professional services rendered in the preparation for and trial of the case at $60 an hour. Md. Code, Art. 16, § 5 (a) provides:

> "In all cases where * * * counsel fees are claimed, the court shall not award such * * * counsel fees unless it shall appear from the evi-

dence that the wife's income is insufficient to care for her needs."

In *Frank v. Frank,* 207 Md. 124, the Court of Appeals said at 130-131:

"It is said in *Hood v. Hood, supra,* [138 Md. 355] at page 360: 'The general rule is that the wife is a privileged suitor in divorce cases, and if she is 'without an income competent for her support, and the maintenance of the suit,' living separate from her husband, the court will allow her * * * money to carry on her suit without inquiring into the merits. * * *'"

In *Quinn v. Quinn,* 11 Md. App. 640 at 652, this Court said:

"Counsel fees should be awarded according to the ordinary factors of labor, skill, time, and benefit; and the amount of the fee cannot be wholly disassociated from the financial resources of the party charged. *Waters v. Waters, supra* [191 Md. 436, 441]. As stated in *Lopez v. Lopez* 260 Md. 509, 520-521, in determining the amount of the counsel fee to be paid by the husband to the wife's solicitor, 'the Court should take into consideration the financial circumstances of the parties, and determine the amount in accordance with the wife's necessities and the husband's financial ability, and allow an amount that will afford the wife an efficient presentation of her side of the controversy.' "

The Chancellor determined that the wife should pay for all legal services rendered to her personally and that the husband's liability should be limited to the cost of legal services incurred that were attributable to the award of custody of and support for the children, which he fixed at $650.

Applying the provisions of the statute and the rule

enunciated in *Frank, supra* to the evidence, we hold that the Chancellor was clearly in error in requiring the wife to pay for the entire legal fees incident to the prosecution of her suit for a divorce and alimony. We further conclude from the criteria set forth in *Quinn, supra* concerning the amount of counsel fees to be paid by the husband that the sum of $1,300 would be appropriate under the facts of this case. We hold that this amount is the husband's fair and reasonable proportion of the total counsel fees incurred for legal services rendered the wife and children in this case.

*Decree affirmed except for the allowance of counsel fees which is modified in accordance with this opinion.*

*Costs to be paid by the appellee.*