SMITH *v.* SMITH

[No. 250, September Term, 1960.]

*Decided May 8, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, HORNEY and SYBERT, JJ.

*Arthur A. Marshall, Jr.,* with whom were *Emmett H. Nanna, Jr.,* and *Nanna & Marshall* on the brief, for the appellant.

*David A. McNamee,* with whom were *W. Carroll Beatty, Richard Bourne* and *Beatty & McNamee* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

A wife appeals from a decree granting a divorce *a vinculo* to her husband and dismissing her cross bill. The trial court found that the appellant committed adultery in 1952, which was condoned by the husband but revived by the wife's conduct in 1960. The court also found that her conduct constituted cruelty and constructive desertion, which justified the husband in leaving the marital home with the two children.

The husband's account of the alleged adultery may be thus summarized. In April, 1952, the Smiths attended a Saturday night party given by their then neighbors and friends, the Clarks, and took their two children, then aged eleven and nine, who were put to bed in the Clarks' bedroom upstairs. When confronted with evidence that their son had been confined to their home at that time because of a serious automobile accident, he later testified that it must have been in February or March. There was considerable drinking at the party, which was attended by several other couples, including the Hogans. Mr. Smith testified that late in the evening Mrs. Hogan began to look for her husband, and he looked for his wife. He found her in the recreation room in the basement in the act of intercourse with Mr. Hogan. He asked them to desist, but they did not comply until after a second request. He insisted that his wife leave, and they took the children and went home. The next day they went to the Clarks to apologize and retrieve her undergarments. They continued to live together, however, until 1960.

The husband testified that the incident in the recreation room had been observed by Mr. and Mrs. Clark and by another guest. In an effort to corroborate his story, he took the

depositions of Mr. and Mrs. Clark, who now reside in Virginia. However, they both denied that any such incident ever took place. Mr. Clark declared that if it had, he would certainly not have allowed the guilty parties to enter his home again. Both the Clarks denied that the Smiths called the next day for any purpose. They continued on friendly terms with both the Smiths and the Hogans.

In a further effort at corroboration, the husband called the two children. The girl's story was that on one occasion when she was in bed with her brother at the Clarks' home, she became aware of a man and a woman in the room whom she could not identify. She saw them get up from a cot at the foot of the bed and embrace and kiss as they left the room. The light was out in the room, but there was a light in the hall. The man seemed to be taller than her father, and she thought the woman's laugh was like her mother's. Her brother recalled the incident but could not say that the woman was his mother. The daughter admitted she did not mention the incident to her father until after the separation in 1960.

Mrs. Smith denied that she had ever committed adultery with Mr. Hogan. She testified that on the two occasions when they took the children to the Clarks' home, her daughter was put to bed with the Clarks' daughter upstairs, and her son with the Clarks' son downstairs. She denied that she ever went into the upstairs bedroom with Hogan or any other man except her husband. She recalled that a man named Hogan had been at one of the Clarks' parties, and she also recalled that he had come to a New Year's Eve party at the Smiths' home in 1958 with Mr. Clark.

It is settled law that the testimony of the plaintiff in a divorce suit must be corroborated. Maryland Rule 1190 f; Code (1957), Art. 35, sec. 4. Corroboration must extend to every element necessary to justify the relief sought. *Hodges v. Hodges,* 213 Md. 322, 326. It cannot be dispensed with, although in contested cases it may be slight. *Zulauf v. Zulauf,* 218 Md. 99, 107. In the instant case there is no testimony at all to corroborate the husband's testimony that he witnessed an act of intercourse by his wife with Hogan. Even if we accept the

daughter's testimony that she identified her mother by her laugh and that her mother embraced and kissed a man not her father on one occasion, there is no evidence that the man was Hogan.

There is no evidence that Mrs. Smith had ever met Hogan before or that she had an adulterous disposition towards him. There is no evidence that Hogan, a married man and a stranger, had an adulterous disposition towards her. Something more than mere suspicion or indiscretion is necessary to overcome the presumption of innocence. Cf. *Pohzehl v. Pohzehl*, 205 Md. 395, 405, and *Schriver v. Schriver*, 185 Md. 227, 241. The circumstances must be such as to lead a reasonable and just man to the conclusion of misconduct, although adverse inferences may be drawn from evidence of disposition and opportunity. Cf. *Abare v. Abare*, 221 Md. 445, 450. In the instant case the opportunity in an open recreation room while a party was in progress would appear to be somewhat limited, and the readiness with which the husband condoned a serious offense, witnessed by three other persons according to his testimony, casts doubt upon the probability that it ever occurred. Cf. *Vogts v. Vogts*, 189 Md. 312, 315. We think the evidence does not support the trial court's finding of adultery.

To overcome the admitted condonation, the burden was upon the husband to show subsequent conduct sufficiently serious to effect a revival of the offense condoned. "Condonation is, of course, forgiveness with an implied condition that the marital offenses shall not be repeated and that the party offended shall be treated with conjugal kindness and on breach of this condition, the right to remedy for former injuries revives." *Cullotta v. Cullotta*, 193 Md. 374, 383. In the instant case there was no proof of subsequent adultery with Hogan or anyone else. The husband's charge of adultery with one Waters was wholly uncorroborated and admittedly condoned. The cause of the separation in 1960 had nothing to do with sexual misconduct. It has been held that acts amounting to cruelty may operate to revive a condoned adultery. *Fisher v. Fisher*, 93 Md. 298, 301; *Hilbert v. Hilbert*, 168 Md. 364,

372. See also *Schriver v. Schriver, supra* at p. 244. It has also been held that where the acts relied on to revive a condoned offense were instigated or partly brought about by the other spouse, such condonation remains. *Bonwit v. Bonwit,* 169 Md. 189, 202; 1 Nelson, *Divorce & Annulment* (2d ed.), § 11.08. We need not pursue the matter further because even if we assume, without deciding, that the condonation was not a bar, we have already held that the original offense was not established. However, the wife's conduct has a direct bearing upon her cross bill charging desertion.

It is undisputed that the husband left the marital home on March 14, 1960, taking the children with him. There is abundant evidence that he had made up his mind that the separation should be permanent. His attempt to justify his action is based upon her conduct during a period some few months prior to the separation, which he claims was a constructive desertion on her part. We think the defense cannot be sustained. It is true that the wife's conduct was reprehensible. He testified that she became seriously addicted to alcohol, although both parties were drinkers, and there was evidence to show that she drank to such excess that she sometimes had to be carried to bed. But as Chief Judge Marbury, for the Court, said in *Nicodemus v. Nicodemus,* 186 Md. 659, 664: "Mere drinking, even excessive drinking, is not a cause for divorce or an excuse for separation, unless such drinking is accompanied by such conduct as to make it necessary for the injured party to leave." There was testimony that she often exhibited temper tantrums, threw water on him on one occasion, and several times threatened to kill him. Evidently he did not take the threats seriously, for he admitted he was not afraid of his wife. There was also evidence of physical affrays between the parties, but usually the wife was on the receiving end. Cf. *Elzey v. Elzey,* 193 Md. 13, 18. We think the evidence does not establish that her conduct was such as to put him in fear of his life or to render it impossible for him to continue the matrimonial cohabitation with health, safety, and self-respect. Cf. *Cullotta v. Cullotta, supra* at p. 382, and *Gambrill v. Gambrill,* 193 Md. 244, 253.

According to the wife's version, it was his conduct that precipitated the quarrels and induced her misconduct. In the latter part of 1959 the wife was seriously and permanently injured in an automobile accident. Up to that time the home life had been stormy but reasonably amicable. Upon her return from the hospital he told her he wanted a divorce and did not intend to remain married to a cripple. A neighbor testified that he made the same remark to her. The wife also testified, and this was verified by the daughter, that he announced at the breakfast table that he proposed to divorce her on the ground of adultery. He continually abused and badgered her to leave the home, but she refused. The children, who were then nineteen and seventeen, respectively, sided with their father and actively participated in the frequent quarrels, in what was virtually a campaign to force her to leave the home. It was because of their attitude that she did not press, in this Court, her claim to their custody.

Upon the whole record we think the decree should be reversed and the case remanded for the passage of a decree dismissing the husband's bill, granting the prayer of the cross bill, and awarding such sum by way of alimony to the wife as the court may deem proper.

*Decree reversed and case remanded, costs to be paid by the appellee.*